1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9        FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   MARGARITA GUTIERREZ DE ORDAZ,          Case No.  1:23-cv-0296-BAM

12                 Plaintiff,

13          v.                              **ORDER REGARDING PLAINTIFF'S**
                                            **MOTION FOR SUMMARY JUDGMENT**
14   MARTIN O'MALLEY, Commissioner of
     Social Security,[1]                    (Docs. 13, 17.)
15

16                 Defendant.

17

18

19                              **INTRODUCTION**

20          Plaintiff Margarita Gutierrez de Ordaz ("Plaintiff") seeks judicial review of a final decision of

21   the Commissioner of Social Security ("Commissioner") denying her application for Disability

22   Insurance under Title II and Supplemental Security Income under Title XVI of the Social Security

23   Act.  The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge

24   Barbara A. McAuliffe.  (Docs. 13, 17.)[2]

25

26   ────────────────
     [1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.
27   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted
     for Kilolo Kijakazi as Defendant in this suit.
28   [2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case,
     including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 7, 9, 10.)

                                       1

1  Having considered the parties' briefs, along with the entire record in this case, the Court finds

2  that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

3  record and is based upon proper legal standards.  Accordingly, this Court will affirm the agency's

4  determination to deny benefits.

5  **FACTS AND PRIOR PROCEEDINGS**

6  Plaintiff applied for Title II Disability Insurance and Title XVI Supplemental Security Income

7  on May 7, 2020, alleging that she became disabled on June 1, 2016.  AR 182-187; 189-198. [3]

8  Plaintiff's application was denied initially on September 25, 2020, and on reconsideration on

9  December 22, 2020.  AR 57-67 (initial denial); 81-96 (reconsideration).  Plaintiff requested a hearing

10  before an administrative law judge ("ALJ") and ALJ Anthony Johnson, Jr. held a hearing on

11  November 15, 2021. AR 40-56.  ALJ Johnson issued an order denying benefits on the basis that

12  Plaintiff was not disabled on December 8, 2021.  AR 21-39.  Plaintiff sought review of the ALJ's

13  decision, which the Appeals Council denied.  AR 7-14.  This appeal followed.

14  **November 15, 2021 Hearing Testimony**

15  ALJ Anthony Johnson, Jr. held a telephonic hearing on November 15, 2021.  AR 40-56.

16  Plaintiff appeared and was represented by her attorney, Nicholas Martinez.  Gerald Keating, an

17  impartial vocational expert, also appeared and testified.  AR 50-55.  An interpreter also assisted with

18  translating from Spanish.  Mr. Martinez opened by noting that Plaintiff's disability claim was

19  represented in Exhibit 13E, recent medical records from LAGS Medical Center confirmed Plaintiff's

20  diagnosis of lumbar stenosis, and positive straight leg raising tests were shown.  AR 43.  The ALJ

21  began by admitting Exhibits 1A through 12F into evidence, excluding section C.  AR 44.

22  Upon examination by the ALJ, Plaintiff testified that in 2012, she was diagnosed with breast

23  cancer, for which she received medication and had pain in her bones.  *Id.*  She said that this made it

24  difficult for her to carry heavy things.  *Id.*  Plaintiff further testified that she had her left arm was

25  operated upon and she suffered from lymphedema that caused significant swelling if she carried heavy

26

27

28  [3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

things.  *Id.*  She also testified that she had a lot of back pain, two vertebrae in her back which were hurt, and a lot of pain in her bones.  *Id.*  She testified that using her left arm continued to be painful when she would try to reach overhead, and she felt pain seven days a week, 24 hours per day.  AR 45. She said that very strong medication allowed her to continue in some activities, and that the day before the hearing was the first day in twenty days that she was able to walk without pain.  *Id.*  However, she also testified that the medication made her very sleepy.  *Id.*

Plaintiff stated that she last worked in 2016.  *Id.*  She further said that in 2006, she worked as a frozen foods preparer at Ruis Food, where she worked at a belt.  AR 45-46.  She further said that she worked at Delmonte, packing fruit  AR 46.  At Ruis Foods, she did not lift anything when she was working on a line doing packing for frozen foods.  *Id.*  At Delmonte, she said that she had to pack boxes which weighed around 15 to 20 pounds.  *Id.*  She said that she was standing the entire time at both of those jobs.  *Id.*  Plaintiff testified that in her position as cook at Pollo Loco, she would need to transport cans of cheese that weighed around 15 to 20 pounds.  *Id.*  Plaintiff testified that in her housekeeper position at Doubletree Hotel, she did part time work and performed the job more slowly than other workers because she had issues and pain in her left arm.  AR 46-47.  She testified that she had to rely on her right hand in that position and generally wrote with her right hand.  AR 47.  Plaintiff estimated that she could lift five to ten pounds at the time of the hearing because of the back and waist pain.  *Id.*

Plaintiff testified that her pain started at her neck, went down her back, and continued to her hips.  *Id.*  She further testified that her side pain went down the sides of her legs, causing cramping and stiffness.  AR 47-48.  She testified that this affected how she walked, as she felt pain when she would stand for a long time, which she attempted to alleviate by laying down and trying to do stretches.  AR 48.  She said that she felt pain when she's sitting or laying down after standing, which impeded her daily activities.  *Id.*  Plaintiff testified that she could walk five minutes on a flat surface before needing to stop and that she wore a belt to help facilitate her movement and to assist with daily activities like purchasing items.  *Id.*  Plaintiff noted that the day before the hearing was the first time in twenty days when she was able to walk without pain.  *Id.*

Plaintiff testified that she took Acetaminophen with codeine, and 500 milligrams of Metallocarbene.  *Id*.  She further stated that she took Tylenol during the day, which made her drowsy but did not take away the pain.  *Id*.  She also took one capsule of Gabapentin every eight hours and 500 milligrams of Normatone for the pain.  *Id*.  She said that her side effects included dizziness "the majority of the time" and stomachaches.  AR 48-49.  Plaintiff testified that she did not usually drive or go out but would take Tylenol when she did.  AR 49.  She said that her husband would usually take her to appointments.  *Id*.

In response to questions from Plaintiff's attorney, Plaintiff stated that she could raise her left arm over her head for a short period of time, especially when she does her exercises, but the pain made it difficult.  *Id*.  Plaintiff said that she wore a compression sleeve, which she said helped her with her movement and swelling.  *Id*.  When asked whether this difficulty affected her ability to take care of her personal hygiene needs, Plaintiff said she usually supported herself with her right arm and could not hold many things with her left hand.  AR 49-50.  Plaintiff said that she had difficulty reaching forward with her left arm "a little bit" and it became difficult when it was inflamed because she would get burning pain or shooting pain in her arm.  AR 50.  Plaintiff further testified that her fingers would get swollen in addition to her left arm.  *Id*.  She said that she supported herself with her right arm and used that arm more but did still feel pain in that arm.  *Id*.

The ALJ introduced the VE, and Plaintiff's attorney stated that he had no objections concerning the VE's qualifications.  AR 50.  The ALJ stated that he would rule out the housekeeper position as it was not performed at SGA rate.  AR 51.  The VE began by classifying Plaintiff's past work as: Packager Line Attendant (DOT No. 920.587-018, medium, unskilled, SVP 2) for both of Plaintiff's packing jobs with Ruis Foods and Delmonte performed at the light work level; and Cook Short Order (DOT No. 313.374-014, light, semiskilled, SVP 3) performed at the light exertional range.  AR 51-52.

The ALJ then asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked the VE to consider a hypothetical person with the same age, education, and work experience as Plaintiff who changed age categories from closely approaching advanced age to advanced age.  AR 52.  The ALJ stated that the hypothetical person would be: able to occasionally and frequently lift,

4

carry, push, and pull no more than 25 pounds; able to stand and/or walk six hours in an eight-hour workday; able to sit six or more hours in an eight-hour workday; and able to occasionally reach overhead with the left upper extremity. AR 52. The VE testified that, because medium work positions require being able to lift up to 50 pounds occasionally, the packer positions would not remain as generally performed. AR 52-53. The VE further testified that the short order cook position would remain intact as generally and actually performed. AR 53.

For the second hypothetical, the ALJ added that the individual from the first hypothetical would be further limited to: occasionally lifting, carrying, pushing, and pulling 20 pounds; frequently lifting, carrying, pushing, and pulling 10 pounds; could stand, walk, and sit approximately six hours in an eight-hour workday; could occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; and could occasionally balance, stoop, kneel, crouch, crawl. AR 53. The VE testified that medium work would be ruled out as generally performed for that individual. *Id.* The VE further testified that the short order cook position would remain intact as generally performed and as actually performed. *Id.*

For the third hypothetical, the ALJ added that the individual from the first hypothetical would be further limited to: occasionally lifting, carrying, pushing or pulling ten pounds frequently; frequently lifting, carrying, pushing or pulling five pounds; and could stand and/or walk two hours in an eight-hour workday. AR 53. The VE testified that all past work would be ruled out for that individual. AR 54. The VE further testified that there would be no skills acquired in the semiskilled cook position that would transfer to other SVP 3 level work at the sedentary level. *Id.*

The ALJ then asked whether an individual would be able to maintain competitive employment if that individual would be absent from work unpredictably but repetitively two times a month or more due to flareups in symptoms or other issues. *Id.* The VE testified that such an individual would not be able to maintain employment in a competitive work environment, as an employer would not be tolerable to the work performance. *Id.* The ALJ then asked whether competitive employment would be possible if an individual were off task and unable to perform the employer's business when scheduled to do so for 15 percent or more of the time. *Id.* The VE testified that such an individual would not be able to maintain employment in a competitive work environment on a sustained basis.

AR 54-55.  The VE testified that his testimony was consistent with the Dictionary of Occupational Titles except for his testimony regarding off-task performance and absenteeism, which was based upon his experience with employers and Department of Labor information, and his testimony regarding limitations with directional reaching, which are not indicated in the Dictionary of Occupational Titles but were based upon the VE's experience and knowledge of the positions.  AR 55.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 21-39.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2016.  AR 29.  The ALJ identified the following severe impairments: type 2 diabetes mellitus, lumbar degenerative disc disease, obesity, and left mastectomy with symptomatic scar.  *Id.*  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 30.

Based on a review of the entire record, the ALJ found that Plaintiff retained the RFC to perform light work with the limitations that Plaintiff could: never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; and occasionally perform overhead reaching with the left upper extremity (non-dominant hand).  *Id.*  The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)."  AR 30-33.

Given this RFC, the ALJ found that Plaintiff was able to perform past relevant work as a short order cook (DOT No. 313.374-014, light exertional level, SVP 3) as actually and generally performed.  AR 33.  The ALJ also found that Plaintiff could perform past relevant work as a hand packer (DOT No. 920.587-018, medium exertion level as generally performed but actually performed by Plaintiff at the light exertion level, unskilled, SVP 2).  AR 33-34.  The ALJ also found that the VE's testimony

1    was consistent with the Dictionary of Occupational Titles and noted that the VE indicated that

2    testimony regarding directional reaching overhead was based upon the VE's professional experience.

3    AR 34.  The ALJ therefore concluded that Plaintiff had not been disabled from June 1, 2016, through

4    the date of the decision.  *Id*.

5                                           **SCOPE OF REVIEW**

6            Congress has provided a limited scope of judicial review of the Commissioner's decision to

7    deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

8    Court must determine whether the decision of the Commissioner is supported by substantial evidence.

9    42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

10   402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

11   1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

12   adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be

13   considered, weighing both the evidence that supports and the evidence that detracts from the

14   Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

15   evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

16   *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

17   determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

18   and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

19   *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

20                                                **REVIEW**

21           In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

22   substantial gainful activity due to a medically determinable physical or mental impairment which has

23   lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

24   1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

25   severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

26   her age, education, and work experience, engage in any other kind of substantial gainful work which

27   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

28

                                                       7

burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

### DISCUSSION[4]

Plaintiff contends that the ALJ erred in his RFC assessment because: (1) the ALJ was left with an evidentiary deficit regarding Plaintiff's lumbar disc disease impairment that he was not permitted to fill with his own lay opinion and interpretations of raw bone scan data and physical findings; and (2) the ALJ "ignored" substantial evidence including bone scans and range of motion findings and provided no explanation as to why the normal findings outweighed the abnormal findings.  (Doc. 13 at 7-13.)   Plaintiff further contends that the ALJ failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints, as Plaintiff testified that she was more limited than the ALJ found.  (*Id.* at 13-16.)

#### A.  Residual Functional Capacity

Plaintiff first argues that the ALJ erred in his RFC assessment because: (1) the ALJ was left with an evidentiary deficit regarding Plaintiff's lumbar disc disease impairment that he was not permitted to fill with his own lay opinion and interpretations of raw bone scan data and physical findings; and (2) the ALJ "ignored" substantial evidence including bone scans and range of motion findings and provided no explanation regarding why the normal findings outweigh the abnormal findings.  (Doc. 13 at 7-13.)

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence.  20 C.F.R. § 404.1545(a)(1).  Indeed, "an ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  *Pinto v. Kijakazi*, No. 1:21-cv-00585-SKO, 2022 WL 17324913, at *9 (E.D. Cal. Nov. 29, 2022) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)); see also *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (finding RFC determination need not directly correspond to a specific medical opinion).  The Ninth

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Circuit has also made clear that "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

Plaintiff argues that because the examining physician Dr. Wagner made no finding as to whether the lumbar disc disease was severe or non-severe and the ALJ discounted Plaintiff's symptoms testimony, the ALJ was left with an evidentiary deficit that she was not permitted to fill with his own lay opinion.  (Doc. 13 at 7-9.)  However, that misstates the ALJ's actions in assessing the medical opinions and Plaintiff's RFC.  In formulating the RFC, the ALJ found the opinions of state agency consultants Dr. Rugama and Dr. Amado persuasive.  AR 33.  Dr. Rugama's opinion was based in part upon examining Plaintiff's pain and the potential source in lumbar spine issues.  AR 61 (noting: "10 /25 /16 -… PE Neck-tense, tight, tender left neck and upper back muscles. No edema or bruising. Full rom but but with some discomfort when looking side ways;"  "6/28/19… Rt hip jt pain, Left leg pain;" and "11/1/18 L/S MRI: Mild degenerative changes in the lumbar spine, most pronounced at L2-L3. No high-grade canal or foraminal stenosis or significant neural impingement identified."); 62 (noting assessment included pain throughout body as well as left shoulder problems and finding that "She was in a MVA on 10/11/16 which likely exacerbated her body/joint pains.").  Dr. Amado similarly examined Plaintiff's pain and mobility in his assessment.  AR 88 (noting Plaintiff complained of shoulder pain and finding: "ros: some diffuse 'bone aches'. PE: easily able to ealk [*sic*] to exam, get out of chair. good dexterity/flexibility… nml gait, station negative Romberg.").

The ALJ appropriately assessed each of these opinions based upon their consistency with the overall record and their supportability based upon the medical consultants' review of their own medical findings.  *See* AR 33; 20 C.F.R. § 404.1520c(c)(1)-(5) (The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."); 20 C.F.R. § 404.1520c(b)(2) ("Supportability and consistency are the most important factors.").  Rather than being left with an evidentiary deficit, the ALJ had the state agency consultants' records and opinions, supported by their findings and the broader medical record.  While neither consultant explicitly listed

lumbar disc disease as a severe impairment, Dr. Rugama considered lumbar problems in his findings and assessment, and both doctors considered the resulting pain symptoms.  AR 61-62; 87-88.  The ALJ also assessed the findings of consultative examiner Dr. Wagner and found his "exertional and reaching overhead limitation somewhat persuasive," but found Plaintiff "more limited based on the medical record as a whole, including the claimant's continued pain complaints (Exhibits 11F and 12F), and the claimant's testimony."  AR 32.  The ALJ then considered these opinions along with other evidence in the record in formulating the RFC.  *See Pinto*, 2022 WL 17324913, at *9.  The ALJ was therefore not left with an evidentiary deficit regarding Plaintiff's lumbar degenerative disc disease impairment and resultant pain symptoms.  Rather than improperly substituting her own opinion, the ALJ appropriately considered the opinions of the state agency consultants, consultative examiner Dr. Wagner, Plaintiff's allegations regarding her impairments, and Plaintiff's treatment records in formulating the RFC.  AR 30-33.  Accordingly, the ALJ did not err in his assessment regarding Plaintiff's lumbar disc disease impairment.

Plaintiff also contends that the ALJ "ignored" substantial evidence including bone scans and range of motion findings and provided no explanation regarding why the normal findings outweigh the abnormal findings.  (Doc. 13 at 10-13.)  Specifically, Plaintiff argues that the ALJ ignored evidence including a positive bone scan demonstrating degenerative changes of the hip, positive straight leg raising test and slump test findings, and diminished reflexes and reduced lower extremities strength findings.  (Doc. 13 at 10-11.); AR 33, 67, 594, 649, 670-71, 675-76.

An ALJ may not cherry-pick evidence in evaluating a medical opinion.  *See Peek v. Kijakazi*, No. 1:21-cv-01828-HBK, 2023 WL 3062107, at *5 (E.D. Cal. Apr. 24, 2023) (citing *Buethe v. Comm'r of Soc. Sec.*, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021)); *Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023) ("Even under the new regulations, the ALJ may not 'cherry-pick' evidence in discounting a medical opinion."). When district courts have analyzed arguments regarding cherry-picking, they have examined whether the ALJ appropriately reviewed the record as a whole.  *See Cruz*, 2023 WL 1447855, at *5 ("However, as part of the summary of medical evidence in the decision, the ALJ did review 'objective findings, diagnostic studies, treatment modalities, and the treatment record as a whole,' including ongoing

1   evidence...that could be considered favorable to Plaintiff... Thus, when viewing the medical record as

2   a whole, it was reasonable for the ALJ to conclude that the severity of limitations assessed... were not

3   consistent with objective medical evidence in the record."); *Sapien v. Kijakazi*, No. 1:22-cv-00553-

4   BAM, 2023 WL 3601571, at *3 (E.D. Cal. May 23, 2023) ("when viewing the medical record as a

5   whole, it was reasonable for the ALJ to conclude that the limitations in fingering and handling

6   proposed... were not consistent with the overall record.")

7         Here, the ALJ reviewed the record as a whole related to Plaintiff's alleged impairments.  The

8   ALJ did not ignore the medical record regarding bone, leg, and extremities tests, but instead cited to

9   findings over multiple years, discussed how and whether impairments were controlled in his RFC

10  analysis, and explained the degree of limitations the impairments imposed in relation to Plaintiff's

11  abilities to perform activities.  AR 30-33.  Moreover, the "key question is not whether there is

12  substantial evidence that could support a finding of disability, but whether there is substantial evidence

13  to support the Commissioner's actual finding that claimant is not disabled."  *Jamerson v. Chater*, 112

14  F.3d 1064, 1067 (9th Cir. 1997).  To the extent Plaintiff suggests an alternative interpretation of the

15  evidence regarding degenerative hip changes, positive straight leg raising and slump tests, and

16  diminished reflexes and lower extremities strength findings, this is not sufficient to establish reversible

17  error.  If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion

18  that must be upheld."  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), citing *Burch v. Barnhart*,

19  400 F.3d 676, 679 (9th Cir. 2005).

20        Plaintiff further argues that the ALJ did not provide an appropriate narrative discussion or

21  build an accurate and logical bridge to his RFC conclusions.  (Doc. 13 at 12-13.)  In support, Plaintiff

22  cites a Western District of Washington case and Seventh Circuit cases in which courts found an

23  insufficient logical bridge from the ALJ's discussion of evidence to the ALJ's conclusions.[5]  *See*

24  *Muheim v. Berryhill*, No. 217CV00247RSMJRC, 2017 WL 5496169 (W.D. Wash. Oct. 24, 2017),

25  report and recommendation adopted, No. 2:17-CV-00247-RSM, 2017 WL 5483774 (W.D. Wash.

26  Nov. 15, 2017).  However, in *Muheim*, the court noted that the "the ALJ's statement that 'imaging

27

28  ---
    [5] The Court will not rely on Plaintiff's cited out-of-circuit authority on this issue.

showed only moderate bursitis and mild tendinosis'… is conclusory as the ALJ did not explain how the imaging results contradicted Dr. Heilbrunn's medical opinion." *Id.* at *3.

Here, the ALJ's opinion regarding the RFC was not conclusory, and instead took into account Plaintiff's symptoms testimony, the medical record, medical opinions, and reported activities.  AR 30-33.  After reviewing this evidence, the ALJ summarized that the medical consultant opinions were:

> consistent with the medical record as the claimant's treatment records show her pain is generally adequately controlled with NSAIDs and Gabapentin, she has not had to see pain management for stronger pain medication, the objective scans discussed above show mild findings, and her physical consultative examination showed she could perform at least medium exertion level work with left arm reaching limitations (Exhibit 7F). The undersigned has reduced the claimant to light exertion level work due to her age and fluctuating weight, as well as her diabetes mellitus not being under complete control, with blood sugar being higher than desired.

AR 33.  The ALJ's discussion was not conclusory and allowed the Court meaningful review by including a narrative explanation and logical bridge from the evidence to his conclusions.  *Muheim*, 2017 WL WL 5496169, at *3.  Plaintiff has therefore not demonstrated that the ALJ failed to provide sufficient narrative explanation of or a logical bridge to his conclusions.

Accordingly, the ALJ did not err in his RFC assessment.

**B. Plaintiff's Subjective Complaints**

Plaintiff next contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding the disabling effects of her lumbar degenerative disc disease and left mastectomy with symptomatic scar as inconsistent with the evidence.  (Doc. 13 at 13-16.)  In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 31. However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record. *Id*. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

First, the ALJ found that Plaintiff's subjective symptoms were inconsistent with the medical evidence. AR 31-33. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Regarding Plaintiff's lumbar degenerative disc disease and resultant pain, the ALJ summarized the medical evidence, as showing a less severe impairment, noting that an October 2016 report showed Plaintiff having full range of motion with discomfort despite reports of back pain, and a November 2018 MRI showed mild degenerative changes in the lumbar spine. AR 31, 378 (October 2016 progress note noting "Neck-tense, tight, tender left neck and upper back muscles. No edema or bruising. Full rom but with some discomfort when looking side ways. No masses."); 284 (November 2018 MRI report with impressions of: "Mild degenerative changes in the lumbar spine, most pronounced at L2-L3. No high-grade canal or foraminal stenosis or significant neural impingement identified."). The ALJ also noted that a December 2020 exam showed that Plaintiff was able to get up out of a waiting room chair, walk at a normal place, take off her shoes and socks, and put them back on, as well as having a normal gait and station and normal range of motion in her extremities. AR 32, 525-26 (December 2020 physical exam report noting "The claimant is easily able to get up out of a chair in the waiting room and walk at a normal speed back to the exam room without assistance. She sat comfortably. She was easily able to get on and off the examination table and easily able to bend over at the waist and take off shoes and socks and put them back on, demonstrating good dexterity and good flexibility."). The ALJ further pointed to January 2021 lumbar x-rays, which showed mild levoscoliosis, decreased disc space at L5-S1, mild osteoarthritis of the lumbosacral spine, and a 2.5cm round calcification possibly a gallstone. AR 32, 530. The ALJ also noted that in March 2021, a spinal exam showed a slightly reduced range of motion, Plaintiff was diagnosed with lumbar

13

spondylosis, and she was prescribed Tramadol.  AR 32-33; 671-72 ("The patient has pain with Lumbar Spine Range of Motion testing," also noting Lumbar Spondylosis assessment).  The ALJ further noted that, following this diagnosis, Plaintiff returned in April 2021 and reported that physical therapy was "going good" and would be started on pain medication.  AR 33; 672 ("Patient is here for follow up on lumbar pain. Patient has started PT twice a week and states that sessions are going good. Patient has emg scheduled for 05/10/21. I will start patient on medication to help with her pain and see her back in 4 weeks for follow up.").

Regarding Plaintiff's breast cancer-related limitations, the ALJ first noted that Plaintiff "testified that she cannot work because back in 2012 she was diagnosed with breast cancer, had difficulty carrying things heavy things, had her arm and back operated on,… has lots of pain in her bones, [and]…. her left arm is in pain every day."  AR 31.  The ALJ then summarized the relevant medical record showing that there were numerous normal or mild findings, noting that 2014 x-ray results showed no evidence of metastatic disease, a December 2017 x-ray showed no evidence of metastatic disease, and a November 2018 bone scan showed no evidence of metastatic disease but showed that plaintiff was osteopenic.  AR 31, 277 (November 2018 exam report noting "I see no suspicious findings to suggest the presence of metastatic bone disease-including the posterior right upper ribs that were questioned as abnormal on the prior."); 316 ("PA and lateral chest x-ray at CII on October 13, 2014 showed no evidence of metastatic disease, unchanged from the x-ray of April of 2014… PA and lateral chest x-ray was done at Fresno Imaging Center on December 27, 2017. It showed no evidence of metastatic disease"); 319 ("PA and lateral chest x-ray done at CII on April 11, 2014 showed no evidence of metastatic disease."); 325 ("PA and lateral chest x-ray at CII on October 13, 2014 showed no evidence of metastatic disease, unchanged from the x-ray of April of 2014."). The ALJ further noted that in December 2020, Plaintiff was diagnosed with left sided breast cancer status post mastectomy, diabetes mellitus, and left shoulder pain with full range of motion and good strength, and was found to have a normal gait and station, normal range of motion in her extremities, and no lymphedema noted in her left arm.  AR 32, 526-528.  The ALJ also pointed to a May 2021 right breast ultrasound which showed no suspicious abnormalities, and a follow-up appointment at which Plaintiff reported continued post-mastectomy left arm pain, right hip pain, and right sciatic-type

pain, but was not treated for those conditions.  AR 31, 542 ("Tomosynthesis was done as well as ultrasound and it was felt to be negative BI-RADS1," setting follow-up bone density test due to osteopenia).  The ALJ further noted that a June 2021 bone density scan showed Plaintiff was osteopenic and an August 2021 breast scan showed no metastatic bone disease.  AR 32, 531 ("I see no suspicious lesions to suggest the presence of metastatic bone disease."), 533 ("According to the World Health Organization classification, the patient's bone mineral density is once again classified as osteopenic.").

In short, the ALJ examined the record regarding Plaintiff's impairments, and appropriately evaluated Plaintiff's symptoms in light of the objective supporting evidence.  Accordingly, the ALJ appropriately discounted Plaintiff's subjective symptoms testimony based upon the lack of supporting medical evidence.

Second, the ALJ considered that, prior to Plaintiff's impairments appeared adequately controlled with medication.  AR 33.  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."  *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983)).  The ALJ noted that Plaintiff's back pain and radiculopathy resulting from lumbar problems, and pain related to Plaintiff's left mastectomy with symptomatic scar, were treated with medication and physical therapy.  AR 31-33.  Indeed, the record reflects that Plaintiff's pain related to lumbar degenerative disc disease appeared to have been treated and improving as medication including NSAIDs and Gabapentin was prescribed and adjusted.  *See* 566-67 (September 2021 report noting "cont nsaid and gaba qhs" and finding normal thoracolumbar curvature appearance); 575-76 (July 2021 report noting "will try chiro appt and will consider another pain mgt," prescribing Nabumetone and normal thoracolumbar curvature appearance); 593-94 (April 2021 report noting "Patient being seen by lags pain management, with EMG and nerve conduction studies pending…Patient currently getting physical therapy at home 3 times a week with some improvement Pain is decently controlled with current medications"; further noting "Back: Thoracolumbar Appearance: normal curvature"); 605-06 (March 2021 report noting "pt has been seen by LAGS and rx Tramadol for pain, PT referral

ok with nsaid and gaba qhs" and "rx adjusted, keep LAGS pain mgt consult"); 614 (February 2021 report noting back pain in "lumbar; sacral; pain radiating to the buttocks; pain radiating to the legs; pain radiating to the foot; finding back pain was alleviated by rest, ice, and analgesics;" also noting "rx adjusted, pending LAGS pain mgt consult;" further noting "rx r/b and side effects discussed with patient," and "Reason for Referral: L-S spine MRI with contrast dx lumbar radiculopathy with disc space decreased, r/o spinal stenosis"); 619-21 (noting back pain in "lumbar; sacral; pain radiating to the buttocks; pain radiating to the legs; pain radiating to the foot" that was alleviated by rest, ice, and analgesics; noting "Back: Thoracolumbar Appearance: normal curvature;" noting Intervertebral disorders with radiculopathy in the lumbar region; prescribing Gabapentin and referring for pain management for "R LS radiculopathy, non responsive to medical care"); 630 (January 2021 report noting back pain located in lumbar, creating stiffness, alleviated by rest, ice, and analgesics)*; 640 (November 2020 report noting "Back: Thoracolumbar Appearance: normal curvature"). The ALJ further noted that Plaintiff's pain resulting from breast cancer treatment requiring arm and back surgery was controlled through prescriptions including Neurontin, Meloxicam, and Tylenol. *See* AR 31-33; 338-340 (April 2016 visit report noting past imaging results being negative for metastatic disease and increasing Neurontin following reports of pain); 376 (March 2017 report assessing joint pain and prescribing "Meloxicam (MOBIC) 15 mg Oral Tab - Take 1 tablet by mouth daily with food as needed for pain"); 334 (December 2017 report noting "She is on meloxicam with partial relief of her pain, instead of Neurontin"); 316-18 (November 2018 report noting left hand, wrist, and hip and that "She is taking Tylenol Arthritis Formula with relief of the pain."); 354 (September 2019 report noting right hip joint pain and stating "Will follow up progress Continue tylenol pm for now"); AR 538 (September 2021 report noting "Patient has postoperative pain in her left arm and some swelling in her left hand" and that Naprosyn was prescribed for musculoskeletal pain). Accordingly, the ALJ appropriately examined Plaintiff's treatments and medication in assessing Plaintiff's symptoms testimony.

Third, the ALJ found that Plaintiff's subjective symptoms and difficulties were inconsistent with her relatively intact daily activities. AR 32. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the

claimant can do and the degree that disability is alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112–13

(9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent

with the alleged symptoms"), superseded by regulation on other grounds (identifying two-step analysis

in assessing the credibility of a claimant's testimony regarding the subjective pain or intensity of

symptoms).  Even where a plaintiff's activities suggest some difficulty functioning, they may be

grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally

debilitating impairment.  *Id*. at 1113.  Here, the ALJ pointed to evidence that showed that Plaintiff

remained capable of some daily activities, including cooking, cleaning, driving, shopping, and walking

for exercise.  AR 369 (August 2017 report noting pain but finding "Activities of daily living:

Independent and safe"); 522-25 (December 2020 examination noting history of left-sided breast cancer

and left shoulder pain, prescriptions including Tylenol, and stating that for activities of daily living,

Plaintiff "does cook and clean. She does drive, shop and perform her own activities of daily living

without assistance and walks some for exercise.").  The Court therefore finds the ALJ appropriately

assessed Plaintiff's demonstrated daily activities in discounting Plaintiff's subjective complaints.

Plaintiff also contends that the ALJ should have interpreted the medical evidence and Plaintiff

testimony as demonstrating greater limitations in Plaintiff's capacity to perform prolonged walking

and standing, citing to the administrative record.  (Doc. 13 at 15.)  However, the ALJ appropriately

discounted Plaintiff's symptoms testimony based upon the medical evidence, the impairments being

controlled by medication and other treatments, and Plaintiff's reported daily activities.  Furthermore,

while Plaintiff puts forward her interpretation of the record, where "evidence is susceptible to more

than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Woods*, 32 F.4th at

788 (citing *Burch*, 400 F.3d at 679); *see also Tommasetti*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("the

ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").  Plaintiff's

alternate interpretation of the record therefore does not demonstrate that the ALJ erred.

Accordingly, the Court concludes that the ALJ did not err in discounting Plaintiff's subjective

complaints.

///

///

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's motion for summary judgment and her appeal from the administrative decision of the Commissioner of Social Security, and affirms the agency's determination to deny benefits. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Margarita Gutierrez de Ordaz.

IT IS SO ORDERED.

Dated:   **March 18, 2024**                    /s/ *Barbara A. McAuliffe*
                                                    UNITED STATES MAGISTRATE JUDGE